**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VERDELL REESE,

      Petitioner,               Civil No. 2:13-CV-12366
                                  HONORABLE DENISE PAGE HOOD
v.                          UNITED STATES DISTRICT JUDGE

JEFFREY LARSON,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF**
**HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,**
**AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA***
***PAUPERIS***

Verdell Reese, ("Petitioner"), confined at the Carson City Correctional

Facility in Carson City, Michigan, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his convictions for voluntary

manslaughter, M.C.L.A. § 750.321, felon in possession of a firearm,

M.C.L.A. § 750.224f, and felony-firearm, M.C.L.A. § 750.227b.  For the

reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted following a bench trial in the Wayne County

Circuit Court.  This Court recites verbatim the relevant facts relied upon by

the Michigan Supreme Court in affirming petitioner's conviction, which are

1

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

See *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant, Verdell Reese, III, was charged with second-degree murder and, alternatively, voluntary manslaughter for the April 2008 death of Leonardo Johnson. Defendant waived his right to a jury trial and proceeded to a bench trial in the Wayne Circuit Court.
>
> According to testimony adduced at trial, defendant owed $2,000 to Johnson, who was so upset about the debt that he had not spoken to defendant for approximately six months. Johnson lived with his cousin, James Long, in Detroit. Defendant was Long's close friend; Long described his relationship with defendant as being "like brothers." Other testimony established that defendant visited the residence that Long and Johnson shared several times a week, even though Johnson did not like that defendant visited with such frequency.
>
> Long testified that on the evening of April 17–18, 2008, defendant and a man named John Smith (also known as J.T.) arrived at the Johnson/Long residence. After they had been at the house for a couple of hours, defendant and another friend, D, drove to a nearby store to purchase liquor. While defendant and D were at the store, Lakeshia Williams, who was Johnson and Long's cousin, left the house with Smith and walked toward the east, where she lived.
>
> Williams testified that, after she left the house, she saw Johnson approach from the east. Once Smith greeted Johnson, Williams heard two gunshots as defendant's car drove past them. She heard the first gunshot come from the driver's side of the car, but testified that she did not know the origin of the second gunshot. Smith placed himself between Williams and the street and, after the second gunshot, ran back to Johnson and Long's house. Johnson also continued on his way to his house, while Williams continued to her house and told her father about the gunshots she

2

heard.

Although Williams did not see the ensuing encounter between Johnson and defendant, Long did.  After parking his car on the street, defendant walked toward the house and began talking with Long.  According to Long, Johnson then approached the house and asked, "[W]hat's up with that [?]" to which defendant replied, "[W]hat's up with what?"  Long testified that he then saw both defendant and Johnson step back and flinch.  Long then heard a shot and saw muzzle fire coming from Johnson's direction, followed by five more shots that came from both Johnson's and defendant's positions.

Once the shooting ended, Johnson ran across the street and through a vacant lot, while defendant remained in front of the house.  A police officer responding to the shooting found Johnson's body facedown on the driveway of a house one block north of the shootings.  Johnson's .40 caliber semiautomatic pistol was nearby and contained a live round that had jammed in the chamber.  The medical examiner testified that Johnson had been shot twice and that the fatal bullet passed through his right arm into his chest.

Defendant had been shot in the right leg.  Long and Smith drove defendant to the hospital in defendant's car, but not before Long put defendant's gun in the house.  Another officer was dispatched to the hospital where defendant was admitted and took a brief statement from defendant.  Defendant "was very vague [and] did not want to give any information about what happened." However, defendant did say that "he was standing outside by the car, heard several shots and was struck by several shots" before being taken to the hospital.  Defendant claimed to know neither the person who fired the shots nor where the shots had come from.  He later changed his version of the events and told another officer that the shots came from a vacant lot across the street, although defendant again said that he could not provide a description of the shooter.  In his third statement to police, defendant denied having seen who shot him and did not state the

3

location of the shooter.  However, he claimed that he did not think he was the intended target of the shooting.

*People v. Reese,* 491 Mich. 127, 130-33; 815 N.W.2d 85 (Mich. 2012)(internal citations and footnotes omitted).

Petitioner's conviction of felon in possession and felony firearm were affirmed on appeal, but the Michigan Court of Appeals reversed his conviction for voluntary manslaughter in an unpublished opinion. *People v. Reese*, No. 292153, 2010 WL 360440,*1, 5 (Mich. Ct. App. Sept. 16, 2010).

The Michigan Supreme Court granted leave to appeal and then reversed the grant of a new trial on the voluntary manslaughter charge, finding that imperfect self-defense is not a freestanding defense that mitigates murder to voluntary manslaughter. *People v. Reese,* 491 Mich. at 150-53.

The Michigan Supreme Court further held that the trial court judge did not clearly err in her findings of fact in rejecting petitioner's self-defense claim. *Reese,* 491 Mich. at 155-60.  Of particular relevance to petitioner's first claim, the Michigan Supreme Court concluded that there was sufficient evidence for the trial judge to conclude that petitioner was the initial aggressor in the altercation, so as to reject petitioner's self-defense claim:

4

To analyze the trial court's conclusion that defendant was not entitled to the justification of self-defense, we must examine its conclusion that by firing two shots from his car at the outset of the confrontation, defendant was the initial aggressor. The Court of Appeals panel concluded that the trial court had erred by finding that defendant fired two shots from his car at the outset of the confrontation with Johnson. The panel observed that "[o]nly the first shot was attributed to Reese based on Williams indicating she heard the shot and assumed it was from his vehicle." The panel also determined that "[t]here is no testimony or evidence to identify who fired the second shot or where it originated." However, Williams testified that she heard two gunshots, at least one of them coming from the car that she testified was defendant's. Although Williams did not know the source of the second gunshot, it was not clearly erroneous for the trial court to conclude, on the basis of the logical inferences drawn from Williams's testimony, that defendant fired both shots from his car. Moreover, Long's testimony was consistent with this conclusion because Long testified that defendant's car arrived at his and Johnson's residence shortly after he heard the two gunshots from the direction of defendant's car. There being evidence to support the trial court's conclusion, the Court of Appeals erred by rejecting the trial court's conclusion.

*People v. Reese*, 491 Mich. at 156-57 (internal footnotes omitted).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Where the prosecution failed to prove that Mr. Reese was the initial aggressor and the trial court found that Mr. Reese had a valid self-defense claim, the trial (sic) violated due process by failing to find Mr. Reese not guilty based on an erroneous factual finding that Mr. Reese was the initial aggressor.

II. The trial court abused its discretion in finding that the testimony of Mr. Smith, who arrived at Mr. Long's home with Mr. Reese and was with Ms. Williams as she walked home, was not relevant to the proceedings.

III. Petitioner was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to conduct an adequate pre-trial investigation in the form of failing to interview John Smith, a witness to the scene of the crime, and/or ask for an adjournment so this witness could be located.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

6

An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

7

### III. Discussion

**A. Claim # 1. Petitioner's sufficiency of evidence claim is non-cognizable in habeas review. Alternatively, the evidence was sufficient to rebut petitioner's self-defense claim.**

In his first claim, petitioner argues that there was insufficient evidence presented by the prosecutor to rebut his self-defense claim.

Petitioner's claim is non-cognizable on habeas review. Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712; 788 N.W. 2d 399 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. at 155, n. 76 (quoting *Dupree,* 486 Mich. at 704, n. 11). Although under Michigan law the prosecutor is required to disprove a claim of self-defense, *See People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." *See Smith v. United States,* 133 S. Ct. 714, 719 (2013)(quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense

8

beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993)(Blackmun, J., dissenting)("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir.1988)(explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F. 2d 50 (6th Cir. 1986)).  Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F. 3d 731, 740 (6th Cir. 1999).  Petitioner does not challenge the sufficiency of the evidence in support of the essential state law elements of voluntary manslaughter; rather, he has only faulted the fact-finder's conclusion that he was the initial aggressor as it relates to his claim of self-defense.  As such, petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F.

9

2d at 1200.

Moreover, even if this Court were to determine that petitioner's claim was cognizable, he would not be entitled to habeas relief.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).  The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

10

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim and may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Furthermore, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6 th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v.*

11

*Abramajtys*, 319 F. 3d 780, 788 (6th Cir.2003); *See also Butzman v. U.S.,* 205 F. 2d 343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial judge).

Under Michigan law, to establish voluntary manslaughter, the evidence must establish (1) that the defendant killed in the heat of passion; (2) that the passion was caused by an adequate provocation; and (3) that there was not a lapse of time during which a reasonable person could control his passions. *Williams v. Withrow,* 328 F. Supp. 2d 735, 748-49 (E.D. Mich. 2004)(citing *People v. Pouncey*, 437 Mich. 382, 388; 471 N.W.2d 346, 350 (1991)).

Under Michigan law, one acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6th Cir. 1999)(citing *People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)).  To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately

12

necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W.2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).  Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322).  "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

Although there was evidence presented that supported petitioner's claim of self-defense, the prosecution also presented evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that the prosecutor had rebutted petitioner's self-defense claim.

The evidence established that petitioner shot at the victim from the driver's seat of his vehicle and later exchanged words with the victim at

the victim's house where gun shots were exchanged.  The provocation in this case involved an initial shooting; then, according to Long, Johnson approached the house and asked, "[W]hat's up with that [?]" to which defendant replied, "[W]hat's up with what?"  Long testified that he then saw both defendant and Johnson step back and flinch, followed by an exchange of gunfire.  There was sufficient time for petitioner to "cool off" or to regain control of his passions following the discharge of bullets from his vehicle.  Petitioner was the initial aggressor when he shot at the victim from his vehicle and later when he sought out the victim at the victim's house, regardless of the fact that the victim shot first at the second encounter.  The encounters were close in time where the victim could reasonably infer that petitioner's presence at his house could lead to an additional assault.  Therefore, the state court did not unreasonably determine the facts with regards to petitioner's claim. *Williams,* 328 F. Supp. 2d at 749.

Petitioner also challenges the testimony of Ms. Williams in support of the trial court's finding that he fired the first shots, making him the initial aggressor.

Lakeshia Williams testified that she heard a gunshot come from

14

petitioner's car and then a second shot.  Long testified that petitioner approached the victim at the victim's house and that there was an exchange of gunfire.  As a result, the victim died of a gunshot wound to the chest.  This evidence was sufficient for the judge to reject petitioner's self-defense claim.

To the extent that petitioner challenges the credibility of the witnesses, he would not be entitled to habeas relief.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*  When evidence in a bench trial "consists largely of contradictory oral evidence, due regard must be accorded the trial court's opportunity to judge the credibility of witnesses." *Bryan v. Government of Virgin Islands,* 150 F. Supp. 2d 821, 827 (D. Virgin Islands 2001).  The trial court judge chose to credit testimony by Williams and Long and not to believe petitioner's version of events.  This Court must defer to the trial

15

court's finding beyond a reasonable doubt that Williams and Long were credible. *Id.* at 828.

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos,* 132 S. Ct. at 6 (quoting *Jackson v. Virginia,* 443 U.S. at 326).  Although there was evidence to support petitioner's self-defense claim and petitioner has given interpretations to the evidence that differ from the state court's interpretation of the evidence, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to the [fact-finder's] resolution of disputed factual issues," petitioner is unable to show that the Michigan Supreme Court unreasonably determined that the prosecutor disproved petitioner's self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). Petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

**B.  Claim # 2.  The right to present a defense claim.**

16

Petitioner next alleges that the trial court judge abused her discretion by finding the testimony of John Smith irrelevant to the proceedings.

John Smith was named as a witness prior to trial and the prosecutor made several attempts to locate him several times to secure his testimony. These efforts were unsuccessful.  After petitioner was convicted, but prior to sentencing, Smith was found.  In a motion for a new trial, petitioner argued that Smith's testimony would have impeached Lakeshia Williams' testimony.  The judge rejected petitioner's claim, finding that John Smith's alleged testimony would have been inconsistent with petitioner's self-defense claim, because Smith stated in his affidavit that he did not see anyone shooting from a vehicle, nor did he see petitioner's vehicle driving down Grand Street shooting a weapon.  Because Smith's proposed testimony would have "completely removed defendant from the entire scene[.]," the judge essentially concluded that it would not have aided petitioner's self-defense claim. *People v. Reese,* No. 08-7283-01, * 2 (Third Circuit Court, Criminal Division, March 16, 2009).

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense.  This right is a

17

fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679  (1986)).  Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*,

18

523 U.S. 303, 308 (1998)(*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  A habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

The Michigan Court of Appeals rejected petitioner's claim finding:

Reese argues that he had a right to present a complete defense, including the right to present witnesses in his defense.  Reese, however, was not directly denied the right to present a defense or present a witness during trial.  Rather, he was denied a new trial to present a witness that neither party called to the stand at trial.  Additionally, while Reese cites case law regarding a defendant's entitlement to a new trial based on newly discovered evidence, he does not directly claim on appeal that Smith's testimony constituted newly discovered evidence.

*************************************************************************

[R]eese never asserted below that he was unaware that Smith, who was his friend and drove him to the hospital, was nearby when the incident occurred.  Rather, Reese argued below that he had newly discovered information that Smith was not served a subpoena to testify at trial and had he been called as a witness,

19

Smith would have testified that no shots were fired from a vehicle at the victim. While Reese argued in his second motion for a new trial that there was newly discovered evidence and prosecutorial misconduct, that motion did not clearly explain the basis for his assertion. As such, Reese failed to demonstrate that Smith's testimony constituted newly discovered evidence.
**********************************************************************

[S]mith would testify that shots were not fired from a vehicle as Smith and Williams walked toward Williams's home. Accordingly, if Smith testified as contended, his testimony would have been contrary to Williams's testimony that she saw Reese's car drive by and then heard a gunshot come from the direction of the vehicle, thus contradicting that Reese was the aggressor.

That notwithstanding, Long also testified that he heard gunshots just before Reese returned, from the direction that Reese came, which Smith's testimony would also have directly contradicted. In that regard, Smith's testimony is confusing as it would have contradicted the only fact that both Williams and Long agreed on, that there was gunfire before the exchange during which Johnson was shot. Therefore, Reese is unable to demonstrate that Smith's testimony would have caused a different result.

Although not addressed by the trial court, Reese is further unable to prove that Smith's testimony could not have been discovered and produced at trial with reasonable diligence. There is no indication in the record that Reese sought assistance or made any effort to ensure Reese's presence at trial. While Reese was prohibited by the conditions of his bond from having contact with potential witnesses, he was not prevented from assisting his attorney to locate Smith. As such, based on the above, Reese's claim that a new trial was warranted based on newly discovered evidence lacks merit. A new trial may also be granted if the prosecutor deliberately suppressed a witness's identity and statements, the information was requested by the defendant, and "the defense could have significantly used the evidence." Reese argued below that Smith was never personally served, despite the prosecution's claim to the contrary. Reese, however, never

claimed that the prosecution withheld any information regarding Smith or his statements, except for the prosecutor's efforts to bring Smith to trial.  Reese also failed to assert that he requested additional information regarding Smith and his testimony.  Moreover, Reese did not object to or request time or assistance to obtain Smith's presence at trial after being informed that the prosecution would not call Smith as a witness.  As such, relief on this basis is not warranted.

The prosecution is required to inform the defendant which witnesses it intends to call and exercise due diligence to produce those witnesses at trial.  Here, the prosecution's witness list indicates that either Smith or Williams would be called as witnesses.  Therefore, Reese was on notice that the prosecution may not call Smith as a witness.  The record further indicates that the prosecution obtained an order for attachment for Smith "to show cause why he should not be required to enter into a recognizance to appear as a witness."  Therefore, there was no reversible error by the prosecution.  Because Reese has failed to demonstrate sufficient legal grounds for a new trial, there was no abuse of discretion by the trial court.

*People v. Reese*, No. 292153, 2012 WL 3020383, at * 2-3 (Mich. Ct. App. July 24, 2012)(On Remand)(internal footnotes omitted).

Petitioner is not entitled to relief on his claim for several reasons.

First, the trial judge did not prevent petitioner from calling Smith as a witness nor did the prosecutor withhold Smith's identity prior to trial. Instead, it appears that for whatever reason, defense counsel may have decided to forego calling Smith as a witness.  Petitioner cannot convert a tactical decision not to introduce evidence into a constitutional violation of the right to present evidence generally. *See Rodriguez v. Zavaras*, 42 F.

21

Supp. 2d 1059, 1150 (D. Colo. 1999); *See also State v. Flood,* 219 S.W.
3d 307, 318 (Tenn. 2007)("Generally, the right to present a defense is not
denied when a defendant does not pursue a line of questioning during
cross-examination").

Secondly, there is no clearly established federal law that the right to
present a defense gives a criminal defendant a second opportunity to
present evidence. *Vinzant v. Lazaroff*, 2009 WL 2412023, at \*5 (S.D. Ohio
Aug. 4, 2009).  "[I]t has never been held as a matter of constitutional law
that a criminal defendant has a right to a second trial even to present very
good evidence." *Id.*

Finally, petitioner is not entitled to relief because Smith's testimony
would not have been particularly relevant in supporting petitioner's self-
defense claim, in that his testimony was inconsistent with petitioner's own
self-defense claim.  Smith stated in his affidavit that he did not see anyone
shooting from a vehicle, nor did he see petitioner's vehicle driving down
Grand Street shooting a weapon.  This Court cannot conclude that the
exclusion of Smith's testimony was so prejudicial so as to deprive
petitioner of a fair trial.  During the exchange of gunshots, Smith was
unable to testify to the source of the gunshots or to who fired first.

22

Because Smith could only testify to hearing gunshots at some point in time coming from down the street, his testimony would have been of limited probative value.

A federal habeas court will not disturb a state court's exclusion of evidence on the ground of relevancy "unless the relevance and probative value of such evidence is so apparent and great that excluding the evidence denies the petitioner the due process of law." *Jones v. Smith,* 244 F. Supp. 2d 801, 814 (E.D. Mich. 2003)(internal citations omitted). "The inquiry in reviewing a claim of improper exclusion of evidence is whether the evidence was rationally connected to the crime charged and, if its exclusion was so prejudicial as to deprive the defendant of a fundamentally fair trial." *Id.* In light of the fact that Smith's testimony would have in many ways been inconsistent with petitioner's self-defense claim, the failure to grant petitioner a new trial based on Smith's affidavit would not entitle petitioner to relief.

Moreover, even if Smith had testified, the trial court could have found Williams's testimony more credible than Smith's, especially considering the fact that Smith and Reese were friends, (Tr. 11/20/08, pp. 6-7), testimony given by Williams was consistent with testimony given by Long,

23

Smith's lack of cooperation when being summoned to trial, and the fact that the affidavits containing contradictory information were supplied only after petitioner's trial.  The Court concludes that denial of petitioner's motion for a new trial to allow Smith's testimony was not an unreasonable application of clearly established federal law so as to entitle petitioner to habeas relief.  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  Ineffective assistance of trial counsel.

In his third claim, petitioner contends that he was denied the effective assistance of trial counsel when counsel failed to conduct an adequate pre-trial investigation by failing to interview or call John Smith as a defense witness.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.

24

*Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*,

25

556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner is not entitled to relief on his claim.

John Smith acknowledged in his affidavit that he was fearful of coming to court, having been shot in the head.  During petitioner's motion

for a new trial, the prosecutor testified to the numerous attempts to secure

Smith for trial.  The victim's family informed the prosecutor that Smith

would never come to court and that they would have to drag him in. (Tr.

11/20/08, p.7).  After being told Smith would not cooperate, the prosecutor

obtained a witness detainer from the trial court. (10/17/08, Pet. to Hold

Material Witness to Bail; 10/17/08, Order for Attach).  Trial counsel is not

ineffective for failing to call as witnesses individuals who are unavailable or

who refuse to cooperate with counsel. *See Coe v. Bell,* 161 F.3d 320, 342

(6th Cir. 1998).

Even if trial counsel called Smith to testify, Smith would not

necessarily exonerate petitioner from being involved in the shooting.  Both

Williams and Long testified that petitioner shot at the victim.  Petitioner

now submits affidavits from Smith that not only contradict the testimony of

Williams, but also contradict the testimony of the other eyewitness, Long.

Furthermore, the affidavits also do not provide exculpatory evidence, since

Smith states in his affidavits that he did not see where the shots came

from and that they sounded like they came from down the street.  Smith

arrived after the shooting between petitioner and the victim ended.  He

and Long transported petitioner to the hospital. (Tr. 10/20/2008, p. 143).

27

In rejecting petitioner's third and final claim, the Michigan Court of Appeals found:

> Smith's testimony would have contradicted Williams's testimony in narrow areas. Even if Smith had testified, however, the trial court still would have been entitled to find Williams's testimony credible and rely on it. Assuming arguendo that counsel erred by failing to call Smith as a witness at trial, Reese is not entitled to relief because, as explained above, he has failed to demonstrate that but for the alleged error, the outcome of the proceedings would have been different, and that the result that did occur was fundamentally unfair or unreliable. Therefore, because Reese cannot show prejudice, counsel was not ineffective and reversal is not warranted.

*People v. Reese,* No. 292153, 2012 WL 3020383, at *4 (Mich. Ct. App. July 24, 2012)(On Remand).

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted). In light of the fact that Smith's testimony would not established that petitioner shot the victim in self-defense, petitioner is not entitled to relief.

The trial judge, in denying petitioner's motion for a new trial, concluded that Smith's testimony would have "completely removed defendant from the entire scene[.]," and thus would not have aided petitioner's self-defense claim. *People v. Reese,* No. 08-7283-01, * 2 (Third Circuit Court, Criminal Division, March 16, 2009). The judge

28

concluded that counsel was not ineffective for failing to call Smith. *Id.,* at *
3.

Petitioner is unable to show that he was prejudiced by counsel's
alleged ineffectiveness in light of the fact that the same trial judge who
convicted petitioner at his bench trial found that Smith's proposed
testimony would not have aided petitioner's self-defense claim when it was
presented to her in petitioner's post-trial motion for a new trial. *See
Dunham v. Travis,* 313 F. 3d 724, 732 (2nd Cir. 2002); *See also Robinson
v. Wolfenbarger*, 2006 WL 897333, *3 (E.D. Mich. April 5, 2006).

In addition, counsel did argue to the trial court judge that petitioner
should be found not guilty under a self-defense theory involving the victim
having shot first.  Trial counsel also appears to have made the strategic
decision of focusing primarily on getting petitioner's second-degree murder
charge reduced to a manslaughter verdict by using an imperfect self-
defense theory, which he was successful in doing.  Counsel's decision to
focus primarily on obtaining a reduction of the second-degree murder
charge to manslaughter by using an imperfect self-defense theory, in lieu
of utilizing a classic self-defense theory, was a valid tactical decision on
counsel's part. *See e.g. Browne v. Clarke,* 38 Fed.Appx. 374, 377 (9th Cir.

29

2002).  Petitioner's third and final claim is without merit.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [1]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

---

[1]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is

31

**DENIED.**

IT IS FURTHER ORDERED that petitioner will be granted leave to

appeal *in forma pauperis.*

s/Denise P. Hood
**HON. DENISE PAGE HOOD**
**Dated:** January 7, 2016          UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 7, 2016, by electronic means and/or ordinary mail.

s/K. Jackson
For Case Manager LaShawn Saulsberry
(313) 234-5014